# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 04-10006-JGD

MICHAEL RODIO )
      Plaintiff )
)
vs. )
)
)
)
R.J. REYNOLDS TOBACCO COMPANY )
      Defendant )
)

## AFFIDAVIT OF MICHAEL RODIO

1. My name is Michael Rodio. I am the plaintiff in the above-captioned action. I was employed by the defendant as a sales representative for 26 consecutive years and I have personal knowledge of the facts stated herein.

2. As a sales representative for Reynolds, my job was to call upon the independent retail outlets in my district, which was composed of Fall River, Taunton, Berkley, Assonet, Somerset, Swansea, and Easton., and I did in fact on some occasions sell cigarettes by signing the customer committing himself to orders that were shipped to him by the wholesaler.

3. that the sales representative of Reynolds was the one and only person the independent retail stores dealt with in entering into contracts with Reynolds.

4. As a salesman, I was instructed to promote Reynolds' products and make sure that every retailer who entered into a contract with Reynolds sold its Monarch brand at the lowest

price he was selling any brand of its competitors or at parity with that brand, regardless of whether that price violated the State minimum laws.

5. I was instructed by Reynolds to maintain the price of Monarch at or below the lowest price of any other brand regardless of whether this price brought the Monarch price below the State minimum.

6. I had been reprimanded in the words of Carlo Fasciani for my so-called failure to perform job accountabilities and failure to follow management instructions. These reprimands had to do with my failure to maintain Monarch below the State minimum price and my failure to place advertising on a counter below 5 feet off the ground. I was directly instructed, and it was demanded of me, that I place Reynolds' VAP communicator on the sales counter next to the cash register. This advertising was to be placed on counters which were directly aimed at children who were 48 inches tall. This, I was told, was the company's number one priority in order to replace the 3,000.00 customers per day that die of smoking-related diseases.

7. I was also instructed to remove competitors advertising off counters to give Reynolds the competitive advantage.

8. When I told Fasciani that placing advertising on counters below 5 feet was against the regulations of the Board of Health, he said to me that he did not care what the Board of Health wanted, that it was legal to place these advertisements on counters below 5 feet and I was to do it.

9. I, on numerous occasions expressed to Fasciani my concerns of lowering the price of Monarch to a level below the State minimum to which he responded that I was to do it regardless of the State requirement.

10. I am familiar with the State minimum pricing requirements as existed in October 2002. The retail price of Monarch, a brand manufactured and sold by Reynolds, was not to be sold for less than $4.01 per pack, and the retail price of Wave, a competitor to Monarch was not to be sold for less than $3.53 per pack.

11. Fasciani also instructed me to maintain the price of Monarch below the price of Liggett, the retail price of Liggett in October 2002 was $3.47 per pack, and the price of Monarch was $4.01 per pack. (see Personal Performance Report dated 9/10/02, introduced at my deposition as Exhibit #20).

12. I was terminated by letter dated October 28, 2002, wherein Reynolds stated that I was being terminated for failing to maintain the price of Monarch below the State minimum and for failing to place signage and advertising materials on counters below 5 feet.

13. All, or nearly all, of the stores for which I failed to place advertising on counters below feet were within 1,000 feet or less of a school or a playground.

14. Contrary to what Reynolds has in its so-called Statement of Undisputed Material Facts, ¶2, I was not fired for misuse of company resources, nor was I fired for my alleged failure to satisfactorily perform job accountabilities. Reynolds fired me as it clearly stated in its Letter of Termination, page 8 for "...failing to maintain the everyday lowest price for Monarch in this account. Wave (competitive product) cigarettes retailed for $3.52 per pack, while RJRT's Monarch retailed for $3.62 per pack.". And for failing "...to place and maintain a VAP communicator on the *front counter* and place the appropriate VAP point-of-sale (POS) advertising and back-up discounting cards in the VAP communicator, *as instructed by management."* *(at* pages 2, 3, 6, 7 and 11)

15. Contrary to ¶39 in its Statement of Undisputed Material Facts, Fasciani did, in fact, fir[e] me because I failed "...to place and maintain a VAP communicator on the *front counter* and place the appropriate VAP point-of-sale (POS) advertising and back-up discountir[g] cards in the VAP communicator, *as instructed by management.*" (Termination Letter, pages 2, 3, 6, 7 and 11)

16. I was confused and bewildered as to why I was terminated because Reynolds covered [up] its true reasons for terminating me by camouflaging it under 'misuse of company resources" and "failure to follow management instructions", etc. I was following management instructions to the best of my ability with the exception of advertising to minors on counters 5 feet or lower off the ground, and not enforcing prices below the State minimum.

17. In Reynolds Statement of Undisputed Material Facts, on ¶47, it cites my concerns abou[t] 'placing a Monarch sign on the counter, that I would address this with the manager." This was always an ongoing problem with Mr. Fasciani. He wanted me to disregard the 5-foot rule of the Board of Health and this I was unable to do, and, in firing me, Fascia[ni] gave these reasons by citing numerous stores in which I had failed to place the advertising on the counters that were lower than 5 feet off the ground.

18. Reynolds is now paying me a pension of $604.98 per month based on having served 26 years, and based on my age of 50 years old at the time. That but for my wrongful termination, I would have been entitled according to Reynolds retirement policies to the following: Had I worked for this defendant until reaching the age of 64, or until 2016, I would have worked for 40 years for this defendant, and I would have been entitled to a pension of $57,218.78 a year or $4,768.23 a month. I now receiving $604.98 or

$7,259.76. I would, therefore, receive $49,959.02 less a year. With my life expectanc[y] 13.9 years from the year 2016, I would have collected $49,959.02 a year for that num[ber] of years, or **$694,430.37.**

19. Also, by my wrongful termination, I lost substantial amounts in income over and abov[e] what I am now making, health insurance benefits, social security benefits, scholarship program, bonus program, life insurance, etc. to the approximate amount of $1,150,000.00.

*Michael Rodio* (signature)

Michael Rodio

## COMMONWEALTH OF MASSACHUSETTS

**BRISTOL, SS.**  September 15, 2005

On this 15th day of September, 2005, before me the undersigned notary public, personal[ly] appeared the above named Michael Rodio, known to me, and acknowledged the foregoing instrument to be his free act and deed,

*Sandy Montair* (signature)
NOTARY PUBLIC
My commission expires: 4/26/10

# PERSONAL PERFORMANCE REPORT

Name: MIKE RODIO           Division: 1130       Date: 9/1 2

Activities Conducted: | W/W | T/A | A/A |
                     |     | P/A | B/A |          Calls Made: 2

OBJECTIVE OF ACTIVITY: MERCHANDISING IN TWO ACCOUNTS - 2 RBI

**Previous PPR Follow Up** (Progress the employee has made against previous PPR)

**Significant Strengths Observed**
AS PER YOUR REQUEST, I ASSISTED YOU WITH 2 RBI INSTALLS TODAY. YOU DID A NICE J( IN
EXECUTING THE TWO SETS. BOTH HAVE WHAT WE NOW NEED, 4 EQIUTY LIGHTS AND A DI
TO SUPPORT PRICING FOR ALL 4 BRANDS.

**Development Needs Observed**
YOU NEED TO BE ADDRESSING THE NEW EDLP PROGRAM GUIDLEINES. WE NEED 1 DISPL
AND 1 2X2 IN EVERY SITUATION. YOU NEED TO BE PRESENTING THE NEW SOS REQIUREM  T
AND TALING UP THE PROGRAM. SHOULD THE ACCOUNT NOT MEET THE THRESHOLD BY   ).
1, THEY WILL BE REMOVED FROM THE EDLP PROGRAM. SHOULD THEY BE SELLING BRAI
BELOW EDLP, THE COMPLIANCE REPORT SHOULD READ "EDLP REQIUREMENT NOT MET"

**Conclusion/ Other** (Brief Description of overall performance against the objective of the activ
TOBACCO DISCOUNT NEEDED THE FOLLOWING; 1 2X2 TO COMPLETE EDLP AND.. LIGGET  .S
LESS THAN MONARCH BY 10 CENTS. NEED TO ADDRESS ISSUE.

Manager: CARLO FASCIANI                    Date: 10/3/02

21.04: continued

(b) Failing to verify by means of valid government-issued photographic identification that each person purchasing cigarettes or smokeless tobacco is 18 years of age or older. No such verification is required for any person who appears 27 years of age or older;
(c) Using self-service displays of cigarettes or smokeless tobacco products;
(d) Failing to place cigarettes and smokeless tobacco products out of the reach of all consumers, and in a location accessible only to outlet personnel.

(3) Retail Outlet Prevention Measures. It shall be an unfair or deceptive act or practice for any person who sells or distributes cigarettes or smokeless tobacco products through a retail outlet located within Massachusetts to sell cigarettes or smokeless tobacco products to consumers without implementing all prevention measures reasonably necessary to prevent the sale of cigarettes or smokeless tobacco products to consumers younger than 18 years old. A person is presumed to have complied with this provision if such person has implemented the following prevention measures:
(a) For any retailer who employs six or more persons, undertaking an in-house secret shopper program at all retail outlets as a routine part of its business, and implementing and operating the prevention measure set forth in 940 CMR 21.04(3)(b). A retailer who receives during any calendar year official written notification from a state or local governmental authority of passing a tobacco compliance check is presumed to comply with this prevention measure for the next calendar year as to each retail sales outlet referenced in such notification as passing the compliance check;
(b) For any retailer who employs five or fewer persons, implementing and operating a training program for all employees who handle exchanges of cigarettes or smokeless tobacco products regarding compliance with laws prohibiting the sale of tobacco products to minors. A model training program for tobacco retailers is available to all retailers at the Office of the Attorney General;

(4) Exceptions to Prohibited Retail Sales and Retail Sales Outlet Practices. The following retail sales and retail sales outlet practices are not unfair or deceptive:
(a) Mail-order sales, excluding mail-order redemption of coupons and distribution of free samples through the mail, that are subject to verification that the purchaser is not younger than 18 years old. Verification of age through the mail shall consist of, at a minimum, ensuring that the person to whom the product is being sent supplies a legible photocopy of a valid government-issued identification;
(b) Vending machines that are located in facilities licensed under M.G.L. c. 138, § 12, to serve alcoholic beverages for consumption on the premises, if the vending machine:
  1. is equipped with a lock-out device that locks out sales from the vending machine unless the locking mechanism is released by an outlet employee. The release mechanism must not allow continuous operation of the vending machine and must be out of the reach of all consumers and in a location accessible only to outlet personnel; and
  2. is located within the immediate vicinity and exclusive control of outlet personnel such that all purchases are observable by the outlet employee(s) controlling the lock-out device; and
  3. is posted with a sign stating that minors are not permitted to purchase tobacco and notifying customers of the lock-out device and identifying the outlet employee(s) to contact to purchase tobacco from the machine.

(5) Advertising Restrictions. Except as provided in 940 CMR 21.04(6), it shall be an unfair or deceptive act or practice for any manufacturer, distributor or retailer to engage in any of the following practices:
(a) Outdoor advertising, including advertising in enclosed stadiums and advertising from within a retail establishment that is directed toward or visible from the outside of the establishment, in any location that is within a 1,000 foot radius of any public playground, playground area in a public park, elementary school or secondary school;
(b) Point-of-sale advertising of cigarettes or smokeless tobacco products any portion of which is placed lower than five feet from the floor of any retail establishment accessible to persons younger than 18 years old, which is located within a 1,000 foot radius of any public playground, playground area in a public park, elementary school or secondary school.